# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JANACE PETERSON,

                    Plaintiff,

-vs-                                                    Case No.  6:08-cv-988-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

## MEMORANDUM OF DECISION

Janace Peterson (the "Claimant"), *pro se* appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits.  *See* Doc. No. 1.  Claimant maintains that the Commissioner's final decision should be reversed and remanded because the Administrative Law Judge failed to find her impairments severe, failed to properly weigh the opinions and records of her treating physicians, erred by applying the medical vocational grids, and discriminated against Claimant at the hearing.  Claimant further maintains that the Appeals Council erred by denying review. For the reasons set forth below, it is ordered that the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Claimant was born on November 2, 1966, and she completed high school as well as some vocational training.  R. 33, 392.  Claimant's past employment experience includes working as certified nursing assistant ("CNA"), a home health care assistant, and as a housekeeper.  R. 97,

392-93.  Claimant has not worked since August 15, 2004.  R. 393.  Claimant cares for her nine minor children under the age of twenty-two.  R. 391.

## II.  RELEVANT MEDICAL EVIDENCE

### 1)  Medical Evidence Available to ALJ

#### A.  Physical Impairment Evidence

On August 31, 2005, September 28, 2005, February 13, 2006, and March 22, 2006, Claimant presented to the Pine Hills Family Health Center complaining of cramps in her knees that had persisted for three weeks, low back pain with spasms persisting for several weeks, and fatigue.  R. 218-21.  On March 22, 2006, Claimant had crepitation in her knees.  R. 218. Throughout the course of treatments, Claimant was treated conservatively with Naprosen and Flexeril.  R. 218, 220-21.

On September 18, 2006, October 19, 2006, October 26, 2006, and November 2, 2006, Claimant was treated by Dr. Sarkis Barupian at the Americas Medical Center, PA.  R. 269-74. On September 18, 2006, Claimant's chief complaints were back pain, knee pain, and sinus problems.  R. 272.  Claimant reported that the only medication she was currently taking was a sinus medication.  R. 272.  On physical examination, Claimant demonstrated decreased range of motion in her knees, but no swelling.  R. 273.  Dr. Barupian's assessment was a history of arthritis sinusitis.  R. 274.  Dr. Barupian's recommended treatment was diet and exercise.  R. 274.  On October 19, 2006, Claimant presented complaining of bilateral knee and low back pain. R. 271.  Claimant had slightly decreased range of motion in her lumbar spine, but a full range of motion in her knees.  R. 271.  No swelling was present in her lower extremities.  R. 271.  Dr. Barupian ordered x-rays, blood work, and prescribed Naprosen.  R. 271. On November 2, 2006,

Claimant continued to complain of back and knee pain. R. 269. Physical exam findings remained the same. R. 269. Naprosen was continued and Flexeril added. R. 269. Dr. Barupian's notes show that a follow-up appoint was scheduled in two weeks, but the record does not contain any additional notes from Dr. Barupian. R. 269.

On October 27, 2006, x-rays of the right and left knee were unremarkable with "no evidence of fracture or dislocation," "no bony lesions or soft tissue calcifications," and "no joint effusion or localized areas of significant soft tissue swelling." R. 275, 277. X-rays of the lumbar spine on the same day were also unremarkable with "no fractures," "no significant spondylolisthesis," and "no degenerative changes." R. 276.

On February 22, 2007, Claimant presented to Dr. Meinhardt of the Sports Medicine Institute. R. 290-92. Claimant reported a twenty year history of bilateral anterior knee pain, left greater than right, but she has not had any specific treatment for her pain in the past. R. 291. Claimant stated that she has taken over the counter Naprosen on occasion, but it has not provided significant relief of pain. R. 291. Physical examination revealed: no acute distress; an increased Q angle bilaterally in her knees; slight lateral positioning of the tibial tubercle; slight maltracking of the bilateral patella with flexion and extension; some tenderness to palpation in the peripatellar region bilaterally; and negative McMurray's and Lachman's tests. R. 291. X-rays revealed "slight malalignment of the patellofemoral articulation bilaterally with some mild degenerative changes," and "mild to medial joint space narrowing bilaterally with no obvious bony or osseous abnormality, fracture or malalignment." R. 291. Dr. Meinhardt's assessment was bilateral patellofemoral pain, and he prescribed physical therapy. R. 291. There is no indication in the record as to whether Claimant participated in physical therapy. R. 291.

On January 10, 2006, Claimant presented to Dr. Alex Perdomo for a consultative examination. R. 190-91. Claimant stated that she had a three year history of lower back and bilateral knee pain with no specific injuries or trauma. R. 190. Claimant reported that she had only been treated with medications which only provided temporary relief of pain. R. 190. Claimant stated that she is unable to stand or sit for more than thirty minutes at a time and she is unable to bend, squat, or lift anything over fifteen or twenty pounds. R. 190. Claimant stated that she was currently taking Hydroxyzine, Trazodone, Fluoxetine, Naproxen, Flonase, Flexeril, iron sulfates, and Claritin. R. 190.

Dr. Perdomo's physical examination revealed:

> [A] pleasant, slightly obese female in no acute distress, alert and orientated x3. She was seen walking down the hall without any difficulties and she did not require an assistive device for ambulation. She was sitting comfortably during the exam and was able to get on and off the examining table without any problems.

R. 190. Physical examination of Claimant's extremities showed:

> [N]o edema, cyanosis, clubbing or ulceration with good distal pulses. Full range of motion of the upper extremities, although painful bilateral shoulder abduction was seen due to patient complaining of pain radiating into the mid and lower back. Full range of motion of the lower extremities, although painful bilateral knee flexion was seen. Patient was able to squat, and stand on her toes and heels, although complained of painful knees and pain radiating into the lower back with squatting.

R. 191. Claimant's back exam showed no tenderness and full range of motion of the cervical spine, but decreased range of motion in the lumbar spine. R. 191. Straight leg testing was negative. R. 191. Neurological exam and mental status exam were normal. R. 191. An x-ray of the lumbosacral spine showed mild facet joint arthropathy in the lower lumbar spine, but was

otherwise normal.  R. 191.  An x-ray of the right knee showed early signs of osteoarthritis.  R. 191.

Dr. Perdomo's impressions were as follows: 1) history of chronic lower back pain with mild musculoskeletal functional limitations on physical exam and mild facet joint arthropathy; 2) history of chronic bilateral knee pain with no significant functional limitations, but evidence of early osteoarthritis; and 3) histories of anemia, allergies, anxiety and depression.  R. 191.  Dr. Perdomo recommended weight loss, more aggressive physical therapy, and home exercise programs for back and knee conditioning.  R. 191.  Dr. Perdomo opined that Claimant can stand, walk, and sit for six hours in an eight hour workday with normal breaks; frequently lift and carry ten to fifteen pounds; avoid repetitive bending, stooping, or crouching; and Claimant has no manipulative limitations.  R. 191.  Dr. Perdomo recommended further "continuity of care for proper management of her other chronic diseases."  R. 191.

No treating physician offered an opinion as to Claimant's functional limitations or as to whether Claimant was totally disabled.

### B.  Mental Impairment Evidence

From February 18, 2005 through February 13, 2007, Claimant sought treatment for her mental impairments at Lakeside Alternatives, Inc.  R. 226-46, 282-87.  On her initial visit, Claimant complained of depression, nervousness, and panic attacks.  R. 239.  Claimant was diagnosed with depression.  R. 239.  She was prescribed 100 milligrams of Zoloft and Claimant stated that she had good results with Zoloft in the past.  R. 239.  On March 18, 2005, Claimant reported that she was still feeling depressed, but Zoloft was helping.  R. 238.  On her next visit, July 21, 2005, no change was made in Claimant's diagnosis, but Zoloft was discontinued and

Prozac 20 milligrams was prescribed. R. 237. On October 13, 2005, Claimant stated she was doing "okay," but was still depressed. R. 235. The provider's notes show that Claimant was compliant with her medication, her speech was normal, memory was good, mood was congruent and depressed, she displayed adequate grooming, behavior was cooperative, and her insight and judgment were fair. R. 235. Claimant was assigned a GAF score of 45, her prescription for Prozac was increased, and Trazadone was added to decrease her depression. R. 236.

On January 5, 2006, Claimant appeared stating that she was having difficulty sleeping, suffering from anxiety, and the increase in Prozac was not helping. R. 233. Claimant stated that she had been experiencing panic attacks. R. 233. The provider's notes show that her speech was normal, memory was good, her mood was congruent, depressed and anxious, she displayed adequate grooming, congruent thought process, appropriate motor activity, cooperative behavior, and her insight and judgment were fair. R. 233. The provider's notes also show that Claimant was continued on Prozac, Trazadone was increased to 50 milligrams and Vistinal was added to decrease anxiety. R. 234. On June 22, 2006, Claimant's diagnosis was changed to Major Depression; however her mood was congruent and euthymic rather than depressed. R. 226. Claimant's speech, memory, appearance, thought process, motor activity, behavior, and insight remained unchanged. R. 226. Claimant's GAF score was 55. R. 227. Claimant's medication regime remained the same, and the providers plan for future treatment was to continue the medications. R. 227.

On October 17, 2006, Claimant presented to Lakeside Alternatives stating that she was feeling drowsy all day long, still feeling depressed, but sleeping okay on Trazodone. R. 285. Claimant's mood was depressed but her speech, memory, appearance, thought process, motor

activity, behavior, and insight remained unchanged. R. 285. Claimant was assigned a GAF score of 60, and her dosage of Prozac was increased to 40 milligrams to decrease her symptoms of depression. R. 286. On February 13, 2007, Claimant presented to Lakeside Alternatives reporting that she was doing well on the current medications. R. 282. Claimant was assigned a GAF score of 60 and her dosage of Prozac was decreased to 20 milligrams. R. 283. The provider's notes show that Claimant's plan for future treatment was to continue the medication regimen. R. 283.

None of Claimant's treating mental health providers offered an opinion as to her functional limitations or whether she was totally disabled. A non-examining state agency psychologist offered an opinion that Claimant's mental impairments were not severe, but the ALJ afforded more weight to the records of Claimant's treating providers at Lakeside Alternatives. R. 27, 255.

### 2) Medical Evidence Submitted to Appeals Council

Claimant submitted the following evidence to the Appeals Council. These records were not available to the ALJ. Claimant alleges that the Appeals Council did not review these records. Doc. No. 24 at 19. In other words, Claimant alleges that the new evidence presented to the Appeals Council renders the denial of her applications erroneous.

### A. Physical Impairment Evidence

On September 8, 1998, May 5, 2006, June 21, 2006, August 29, 2007, September 5, 2007, and September 17, 2007, Claimant presented to the Family Health Center for treatment. R. 305-306. Laboratory studies were conducted on September 8, 1998, June 21, 2006, and September 5, 2007. As of September 19, 2007, Claimant was taking the following medications:

Motrin 600mg; Vicodin 500mg; Flexeril 10mg; Mobic 7.5mg; Motrin 400mg; Pepcid 20mg; Nasonex; Loratadine 10mg; Indocin 25mg; Vistaril 25mg; Trazodone 50mg; Prozac 20mg; Prozac 10mg; and Flonase. R. 307-08. During this time period, Claimant's chief complaints and diagnoses were joint pain in her ankle, arthropathy unspecified, allergic rhinitis, fatigue and back pain. R. 307, 333-34, 336, 341.

On May 5, 2006, physical examination of her musculoskeletal system showed no swelling and a full range of motion, and physical examination of her extremities showed no evidence of joint effusion and a full range of motion. R. 336. Claimant reported that she has a history of depression and social phobias for which she is being treated at Lakeside Alternatives, but that her symptoms are currently stable. R. 336. On June 21, 2006, Claimant complained of joint pain during menstruation, but physical examination of her extremities revealed no clubbing, cyanosis or edema. R. 334. On September 17, 2007, Claimant reported that she fell when getting out bed due to dizziness. R. 341. Claimant reported that she felt dizzy for two weeks without changes in her diet or medications. R. 341. Claimant stated that her back pain was 7 on a scale of 1 to 10 with 10 being the most severe pain. R. 341. Physical examination of her back revealed mild limitations in flexion and mild paraspinal muscle spasm. R. 342. Extremities and musculoskeletal systems were normal with full ranges of motion and normal muscle strength. R. 342. Claimant was prescribed Motrin, Vicodin, and Flexeril. R. 342.

On July 12, 2005, Claimant presented to the emergency room at Orlando Regional Sand Lake Hospital complaining of bilateral knee pain and sinus pain. R. 348-53. Claimant was diagnosed with joint pain in her left leg. R. 348.

On August 22, 2007, Claimant presented to the emergency room at Health Central complaining of left leg pain, swelling and tingling which began two weeks prior. R. 368, 370. Physical examination revealed no tenderness or edema. R. 371. Specifically, the left leg was normal, showing no edema, pain or tenderness, and a full range of motion and strength. R. 371. An x-ray of Claimant's left foot was normal, revealing no fracture or dislocation. R. 367. Claimant was prescribed an anti-inflammatory, Naprosen, and discharged. R. 372. On August 29, 2007, a x-ray of Claimant's left knee was normal. R. 375.

On September 17, 2007, Claimant presented to Dr. Laurence Richman complaining of pain and swelling in the left ankle with tenderness and numbness. R. 383. Examination showed intact reflexes, slight swelling of left foot compared to right foot, slight discomfort of left foot compared to right, but normal dorsi and plantarflexion of the left foot. R. 383. X-rays of the left foot showed no fracture, but some spurring at the talotibial joint. R. 383. Claimant was diagnosed with osteoarthritis, capsulitis of the left ankle, abnormal gait, and lymphedema. R. 383. Claimant was advised to stop taking Motrin and was placed on Mobic. R. 383.

In the evidence presented to the Appeals Council, none of Claimant's treating physicians offered an opinion regarding Claimant's functional limitations or regarding whether Claimant was totally disabled.

### B. Mental Impairment Evidence

On June 27, 2007, July 25, 2007, and August 23, 2007, Claimant received treatment at Lakesides Behavioral Healthcare, Inc. R. 296-303.[1] During that time, her speech was normal, memory only fair, mood was congruent and depressed, she displayed adequate grooming,

---

[1] On August 22, 2007, Health Central's records indicate a psychiatric exam of Claimant's mood and affect were normal. R. 371.

appropriate motor activity, cooperative behavior, and fair insight and judgment. R. 296, 299, 304. On June 27, 2007 and July 25, 2007, Claimant was assigned a GAF score of 60, but on August 23, 2007, she was assigned a GAF score of 50. On August 23, 2007, one of her assigned treatment goals was finding employment. R. 304.

On September 6, 2007 and September 14, 2007, Claimant was treated at the Orlando Psychiatric Associates, Inc. R. 354-55. On September 6, 2007, Claimant stated that she was sleeping better after an increase in Trazodone and her anxiety had decreased to the point she was able to go to stores. R. 354. Claimant's assessment was stable and her treatment plan called for continuing the medications. R. 354. On September 14, 2007, Claimant's assessment remained stable, but her Trazodone was decreased and Paxil was added to her medical regimen. R. 355. There are no other records from Orlando Psychiatric Associates in the record.

On September 19, 2006, Claimant began an adult outpatient treatment plan with Lakeside Behavioral Healthcare, Inc. R. 356, 362-63. The outpatient plan was to be reviewed on November 18, 2006. Claimant was diagnosed with: 1) major depression, recurrent, mild; 2) panic disorder with agoraphobia; and 3) chronic physical pain. R. 356. The evidence presented to the Appeals Council does not contain any reports, medical records, or summaries regarding that particular treatment plan between September and November 2006.

On May 2, 2007, Claimant presented to Lakeside Behavioral Healthcare reporting that she was still depressed and that Prozac was no longer helping her depression. R. 364. Claimant's speech was normal, memory only fair, mood was congruent and depressed, Claimant displayed adequate grooming, congruent thought process, appropriate motor activity, cooperative behavior, and fair insight and judgment. R. 364. Claimant was assigned a GAF score of 60 and

her dosage of Prozac was increased to decrease her depression.  R. 365.   On August 23, 2007, her condition had not changed significantly, but her Trazodone dosage increased to 200 milligrams.  R. 359-61.  On August 23, 2007, Lakeside Behavioral Healthcare's records show that one of its treatment goals for Claimant was finding employment.  R. 359.

In the evidence presented to the Appeals Council, none of Claimant's treating physicians offered an opinion regarding Claimant's functional limitations or regarding whether Claimant was totally disabled.[2]

## III.   PROCEEDINGS BELOW

On October 28, 2005, Claimant filed an application for a period of disability, disability insurance benefits, and supplemental security income alleging an onset of disability as of August 15, 2004.  R. 74-81.[3]  Claimant alleges disability due to depression, anxiety, panic attacks, insomnia, phobias, and pain in her back, knees, and legs.  R. 108, 124, 394.

Claimant's application was denied initially and upon reconsideration.  R. 41-42, 49-50, 41-44.  Thereafter, Claimant requested a hearing before an administrative law judge stating:

> I'm still having problems with my depression, anxiety, phobias that prevent me from being around people and functioning in society. Also, my pain in my knees and legs which make it hard for me to get out of bed and walk some days and so does the pain in my back.

R. 54.  On July 11, 2007, a hearing was held before Administrative Law Judge Philemina M.

---

[2] On September 9, 2007, Claimant included written arguments along with her submission of new evidence to the Appeals Council.  R. 293-94.  Claimant stated that there are additional medical records from Lakeside Behavioral that she was unable to obtain because they cost too much.  R. 293.  Claimant argued that the ALJ made an unfair judgment about her instead of relying on the medical records for the ALJ's decision.  R. 293.  Claimant also argued that the ALJ discriminated against her at the hearing.  R. 294.

[3] In the Administrative Law Judge's decision and the Commissioner's memorandum, they state that Claimant filed her applications for a period of disability, disability insurance benefits, and supplemental security income on October 4, 2005.  R. 24; Doc. No. 27 at 1.  However, a review of the record shows the respective applications are dated October 28, 2005.  R. 74-81.

Jones (the "ALJ").  R. 387-420.   Claimant was forty years of age at the time of the hearing.  R. 391.  The Claimant, her eldest daughter Janacha Ford, and vocational expert Jane Beougher (the "VE") testified at the hearing.  R. 387-420.  Although Claimant is proceeding *pro se* on appeal to this Court, Claimant was represented at the hearing by Edward Doskey, Esquire.  *Id.*

Claimant testified that her depression, anxiety, panic disorder, and pain in her legs and back cause her to be disabled.  R. 394.  Regarding her depression and anxiety, Claimant stated:

> Depression comes – I don't know, I be depressed – well, depression.  It has me where I can't go anywhere, where I don't think – like I don't want to be seen and I want to stay in the house. . . . I don't want to be around nobody.

R. 395.  Regarding her physical impairments, Claimant stated:

> Well, my legs, they swells and can't hardly like – they swell, they hurt and . . . some days I can't get out of bed and my daughters – my oldest daughters, they kind of have to . . . help out on the days I can't get out of bed.  Then my back hurts and definitely when both of them hurt at the same time, it's like I'm in severe pain when both of them are acting up at the same time.

R. 395.  Claimant testified that she is able to take care of young children, but her eldest daughter has to come over and help her a great deal, especially when Claimant is unable to get out of bed, cook, or wash clothes.  R. 395.   All of Claimant's older children have to help out when she is unable to take care of the younger children.  R. 396.  Claimant testified that it is the swelling in her legs and back as well as exhaustion that prevent her from getting out of bed and cooking.  R. 396.

Claimant stated that she is able to manage finances and pay the bills, but her eldest daughter helps her.  R. 396.  Claimant testified that she does not like being around people and does not go out of the home to visit people.  R. 397.  The following exchange occurred between

the ALJ and Claimant:

> Q.     Well, you have a two year old.  Did – were you married at the time?
>
> A.     No.
>
> Q.     So did you go out of your home to meet the child's father?
>
> A.     No, he came to me.
>
> Q.     I'm sorry?  He came to your - -
>
> A.     Came to me, yes.
>
> Q.     He came to your home.  Is that what you're saying?
>
> A.     Yes.  I don't go out unless I have to.
>
> Q.     And when you were pregnant, did you go out to make your – keep you doctors' appointments and things of that nature?
>
> A.     Not really, no.  I went when I had to.
>
> Q.     So you didn't go out to doctors' appointments when you were pregnant?
>
> A.     Only when – I didn't really go to the doctor with him.  That's what I'm trying to tell you.  I didn't go to the doctor regularly like I usually would do, keeping your regular appointments and stuff like that, no.  I wasn't physically able to just – I wasn't physically able to go anywhere.  I was depressed with him.  I wasn't able to drive.  I was scared, like to get on the road.  I would stop and just stayed home. . . .

R. 397-98.  Claimant testified that she cannot work because she cannot be around people.  R. 399.  Claimant attributed her inability to be around people to her depression and mental problems.  R. 399-400.

Claimant testified that she can stand between fifteen to twenty minutes before having to sit down, and needs to rest fifteen or twenty minutes before resuming.  R. 405.  Claimant stated that she quit her last job because she was not physically able to work.  R. 406.

The ALJ posed a hypothetical question to the VE based on Dr. Gloria Hankins' Physical Residual Functional Capacity ("RFC") evaluation, wherein the individual could perform light work, could occasionally stoop, kneel, crouch and crawl.  R. 408.  The VE responded that such

an individual could not perform Claimant's past relevant work.  R. 408.  The ALJ then added to the hypothetical, based on Dr. Alex Perdomo's consultative examination report, that the individual could sit, stand and walk for six hours of an eight hour day, and could lift fifteen pound, should avoid repetitive bending, stooping or crouching.  R. 409.  The VE responded that such an individual could be food checker and a food and beverage order clerk.  R. 409-10.  The VE testified that there were substantial positions for both jobs in the national economy and in Florida.  R. 409-10.  The ALJ added a further limitation to the hypothetical that the individual could only perform simple, routine, repetitive tasks.  R. 410.  The VE responded that such an individual would be unable to perform the position of food checker, but would still be able to do the food and beverage order clerk, as well as a precision assembler.  R. 410.  Claimant's attorney then asked the VE to additionally consider an individual who was unable to stand for more than fifteen to twenty minutes without taking a fifteen or twenty minute break.  R. 411.  The VE responded that such an individual could not perform any jobs in the national or local economy. R. 412.  Claimant's attorney asked to VE to also consider an individual who was unable to meet competitive standards in her ability to interact appropriately with the general public and to maintain socially acceptable behavior.  R. 412.  The VE testified that there were no jobs that such an individual could perform.  R. 412.

Claimant's daughter, Janacha Ford, testified that she visits her mother about every other day to help with caring for her brothers and sisters, her mother's personal hygiene, and household chores.  R. 414-19.  "And I do it because she be asleep, tired or she can't get up or if she do get up and have to do it, it might . . . make her stress and I try not to stress her."  R. 415. Ms. Ford testified that she has to remind Claimant to bathe two to three times a week.  R. 415.

The ALJ asked Ms. Ford who takes care of the younger children when Ms. Ford is not present and Claimant is asleep. R. 417. Ms. Ford responded that the seventeen year old twins care for the other children. R. 417. Ms. Ford testified that the younger children also go to day care sometime if Claimant gets up out of bed or is able to take them. R. 418.

On August 17, 2007, the ALJ issued a decision that Claimant was not disabled. R. 24-32. The ALJ made the following significant findings:

1. The Claimant meets the insured status requirement of the Social Security Act through December 31, 2009;

2. The Claimant has not engaged in substantial gainful activity since August 15, 2004, the alleged onset date;

3. The Claimant has the following severe impairments: facet joint arthropathy of the lumbar spine; osteoarthritis of the knees; and an affective mood disorder;

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that the Claimant has the residual functional capacity to perform sedentary work, with restrictions. The Claimant can lift or carry up to 15 pounds occasionally, stand or walk for about 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. The Claimant has no limitation of pushing with her upper or lower extremities. The claimant has no postural limitations, except she should avoid repetitive bending, stooping, and crouching. The Claimant has no manipulative, visual, communicative, or environmental limitations. The Claimant can perform only simple, routine, repetitive tasks;

6. The Claimant is unable to perform any past relevant work;

7. The Claimant was born on November 2, 1966, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date;

8. The Claimant has at least a high school education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferable job skills;

10. Considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Claimant can perform.

*Id.* At step two of the sequential process, the ALJ found Claimant's mental impairment of affective mood disorder to be a severe impairment. R. 26-27. More specifically, the ALJ stated the following:

> Considering the record as a whole, the undersigned is also persuaded that the [C]laimant's severe affective mood disorder results in the following degree of limitation in the broad areas of functioning set out in disability regulations for evaluating mental disorders and in the mental disorders listings 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. In reaching these conclusions, the [ALJ] has considered the opinion expressed by the State agency psychologist, Dr. Wiener, with respect to the severity of the [C]laimant's mental impairment. In July 2006, Dr. Wiener opined that the [C]laimant's mental impairment was not severe and resulted in only mild restrictions and difficulties. However, this opinion is weighed as a statement from a non-examining expert source. Greater weight is afforded to the record at Lakeside Alternatives where the [C]laimant was actually examined.
>
> In January 2006, the record a Lakeside Alternatives reflected that the [C]laimant had panic attacks that woke her up at night. In February 2007, the record at Lakeside Alternatives also reflected that the [C]laimant had a depressed mood and affect, with only fair insight and judgment. Thus, the undersigned finds that the State agency psychologist, Dr. Wiener, understated the severity of the [C]laimant's mental impairment, and that the [C]laimant's mental impairment is severe.

R. 27 (internal citations omitted). Thus, the ALJ found Claimant's mental impairments to be a severe impairment and afforded Claimant's records from Lakeside Alternatives greater weight than the non-examining state agency psychologist's opinion regarding severity. *Id.*

With respect to the ALJ's findings regarding the Claimant's RFC, the ALJ gave

significant weight to the opinion of Dr. Perdomo, an examining consultative physician, and the objective medical evidence, but afforded less weight to the RFC opinion of the non-examining state agency consultant, Dr. Hankins.

> In accordance with Social Security Ruling 96-6p, the [ALJ] has considered the opinion expressed by the State agency medical physician, Dr. Hankins, with respect to the [C]laimant's [RFC]. In July 2006, Dr. Hankins estimated that the [C]laimant could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for six hours in an 8-hour workday. However, this opinion is weighed as a statement from a non-examining expert source. Greater weight is afforded to the objective medical evidence and to the opinions and records of Dr. Perdomo, Dr. Barupian, and Dr. Meinhardt who had the benefit of actually examining the [C]laimant.

> In January 2006, Dr. Perdomo found the [C]laimant with painful bilateral knee flexion, but full ranges of motion in her lower extremities. Dr. Perdomo also found the [C]laimant with a decreased range of motion of her thoracolumbar spine, but negative straight-leg raises. Dr. Perdomo further found the [C]laimant with normal station, coordination, grip, fine manipulation, motor strength, sensation, and deep tendon reflexes. In addition, Dr. Perdomo opined that the [C]laimant had only mild facet joint arthropathy in her lower back, and only early osteoarthritis in her knees with mild or insignificant musculoskeletal functional limitations. Moreover, Dr. Perdomo observed the [C]laimant able to walk down the hall without any difficulties, sit comfortably during an examination, and get on and off an examination table without any problems. Dr. Perdomo opined that the [C]laimant could lift or carry only 10 to 15 pounds at a time, but sit, stand, or walk for as much as 6 hours in an 8-hour workday, with avoidance of repetitive bending, stooping, and crouching.

> In October 2006, x-rays of the [C]aimant's lumbosacral spine were unremarkable and revealed no significant spondylolisthesis or degenerative changes. In October 2006, x-rays of the [C]laimant's knees also revealed no joint effusion or localized areas of significant soft tissue swelling. In addition, in November 2006, Dr. Barupian found the [C]laimant with an only slightly decreased range of motion of the lumbosacral spine on flexion, as well as

knees with normal limits and with full ranges of motion.

In February 2007, x-rays of the [C]laimant's knees revealed only slight malalignment and only some mild degenerative changes, with only mild to medial joint space narrowing. Also, in February 2007, Dr. Meinhardt found the [C]laimant with only some tenderness to palpation of the peripatellar region, bilaterally, as well as with no varus or valgus instability, and a negative McMurray's test, Lachman's test, and anterior/posterior drawer.

Thus, the undersigned finds that the opinion expressed by the State agency physician, Dr. Hankins, is consistent, in only some respects, with the evidence as a whole. The undersigned affords some weight to Dr. Hankin's opinion, with respect to the [C]laimant's ability to sit, stand, and walk, but little weight with respect to the [C]laimant's ability to lift and carry. Accordingly, the undersigned finds that the [C]laimant can perform only sedentary work, with restrictions.

R. 30-31. The Claimant's limitations caused by her mental impairments were also considered by

the ALJ when forming the RFC determination.

In addition, in February 2007, the record at Lakeside Alternatives reflected that the [C]laimant reported doing well on her current medications, including Prozac, Vistaril, and Trazadone. Thus, the undersigned further finds that the [C]laimant can perform simple, routine, repetitive tasks.

R. 31. Accordingly, the ALJ considered Claimant's physical and mental limitations when

making the RFC determination.

After the ALJ's decision, the Claimant requested review by the Appeals Council. R. 14.

In the request, Claimant stated:

The [ALJ] made an unfair judgment against me. My leg pain is worse now affecting my ankle with swelling, not able to stand long. Also, my depression is major along anxiety and panic attacks, self esteem, fatigue, and lack of hope.

R. 14. Claimant attached a handwritten letter to her request and purportedly new evidence

consisting of the following: 1) medical records from Lakeside Behavioral Healthcare, Inc, and Orlando Psychiatric Associates, Inc. dated September 19, 2006 through September 14, 2007; 2) medical records from the Family Health Center dated September 8, 1998 through September 17, 2007; 3) emergency room records from the Orlando Regional Healthcare System/Sand Lake Hospital dated July 11-12, 2005; 4) medical records from Lakeside Behavioral Healthcare/Lakeside Alternatives, Inc. dated September 19, 2006 through July 25, 2007; 5) medical records from Health Central dated August 22, 2007 through August 29, 2007; 6) a medical report dated September 17, 2007 from Laurance Richman, D.P.M.; and 7) additional medical records from Health Central dated August 29, 2007.  R. 10-11, 293-386.

On May 1, 2008, the Appeals Council denied review stating that it had "considered the reasons you disagree with the decision and the additional evidence . . . [but] [w]e found that this information does not provide a basis for changing the [ALJ's] decision."  R. 7-8.  The Appeals Council also stated that "[c]onsideration has also been given to your allegations that the decision was unfair and that you were discriminated against by the [ALJ].  However, after a careful review of the record, the Council can find no evidence in support of [Claimant's] contentions."  R. 8.  Thus, the ALJ's decision became the final decision of the Commissioner.  R. 7.  On June 17, 2009, Claimant, proceeding *pro se*, filed an appeal before this Court.  Doc. No. 1.[4]

IV.    **THE PARTIES' POSITIONS**

The Claimant assigns five errors to the Commissioner.  Doc. No. 24.  First, the ALJ erred by failing to determine that Claimant's "musculoskeletal system and mental disorders" resulted in severe impairments or a combination of impairments that are severe.  Doc. No. 24 at 2, 11.

---

[4] On July 14, 2008, the Appeals Council issued an order denying Claimant's request for reopening, but granted Claimant an additional thirty days to commence an appeal in this Court.  R. 4.

More specifically, Claimant alleges that the ALJ failed to discuss the effects of her mental impairments on each other and in combination with her physical impairments. Doc. No. 24 at 12. Second, the ALJ erred by giving more weight to the consulting opinions than to opinions of the Claimant's treating physicians. Doc. No. 24 at 10. Third, the Appeals Council erred in denying Claimant's request for review because it "did not take the time to look over the newly submitted materials in the [C]laimant's case. *Id*. at 19. Fourth, "the ALJ failed to listen . . . and ask pertinent questions" at the hearing because "[t]he medical record is filled with evidences [sic] of [Claimant's] depression, anxiety, panic disorder, inability to function socially, and the inability to perform substantial gain[ful] work." *Id*. at 13. Finally, the ALJ erred by relying exclusively on the medical vocational grids. Doc. No. 24 at 18. Thus, Claimant requests an order reversing the final decision of the Commissioner and a remand for an award of benefits or, alternatively, a remand pursuant to sentence of four of 42 U.S.C. § 405(g).

The Commissioner maintains that substantial evidence supports the ALJ's decision. Doc. No. 27 at 3. The Commissioner asserts the following: 1) the ALJ determined that Claimant suffers from the severe impairments including: facet joint arthropathy of the lumbar spine, osteoarthritis of the knees, and an affective mood disorder; and the ALJ properly determined that Claimant's impairments, while severe, did not meet the listing level severity required for a disability finding; and the ALJ properly included Claimant's mental limitations in making the RFC determination; 2) the ALJ properly weighed the opinion evidence of record and substantial evidence supports the ALJ's finding; 3) the Appeals Council considered the new evidence Claimant submitted and that evidence does not render the ALJ's denial of benefits erroneous; 4) the hearing was fair; and 5) the ALJ did not rely exclusively on the medical vocational grids, but

received testimony from the VE.  Doc. No. 27 at 1-12.  Thus, the Commissioner requests that the final decision be affirmed.  Doc. No. 27 at 12.

## V.     LEGAL STANDARDS

### A.     THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the

meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does

not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to

establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 CFR § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

**B.     THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**VI.     ANALYSIS OF ALLEGED ERRORS**

**1)  Whether the ALJ Erred at Steps Two and Three**

Claimant alleges that the ALJ erred by failing to determine that her "musculoskeletal and mental disorders" resulted in severe impairments.  Doc. No. 24 at 2, 11.  More specifically, Claimant alleges that the ALJ failed to discuss the effects of her mental impairments on each

other and in combination with her physical impairments. Doc. No. 24 at 10. Claimant's argument is without merit. The ALJ specifically found that Claimant suffers from severe impairments of facet joint arthropathy of the lumbar spine, osteoarthritis of the knees, and an affective mood disorder. R. 26-27. In the ALJ's decision, she states that the "combination of impairments causes significant limitation in the [C]laimant's ability to perform basic work activities." R. 26. In determining Claimant's RFC, the ALJ specifically included Claimant's functional limitations as a result of her mental impairments. R. 31. According, the Court finds that the ALJ did not err because she specifically considered Claimant's impairments individually and in combination.

Claimant also implies that the ALJ erred by not finding that Claimant's impairments meet the listing level of severity required for a disability determination. Doc. No. 24 at 16. The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the claimant to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a claimant must present specific findings that meet the various tests listed under the applicable listing. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and

laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). In the present case there are no opinions or reports from treating, consulting, or examining physicians providing specific findings that Claimant meets any of the listing level requirements. There are no laboratory tests, including x-rays, showing any physical impairment that meets any listing. The mental impairment records show diagnoses, but only conservative treatment. Moreover, her last mental health records show that one of the treatment goals was finding employment. R. 304, 359. Accordingly, the Court finds that to the extent Claimant argues the ALJ erred by failing to find her impairments meet the listing levels for a presumptive disability find, Claimant failed to meet her burden.

### 2) Whether the ALJ Erred in Weighing the Medical Opinions

Claimant argues that the ALJ erred by affording more weight to the opinions of the consulting physicians than to her treating physicians. Doc. No. 24 at 10. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate

decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[5] Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

In the present case the ALJ specifically afforded more weight to the records of Claimant's treating physicians. R. 26, 30-31. The ALJ afforded more weight to the records of Lakeside Alternatives rather than the opinion of the non-examining state agency psychologist, Dr. Hankins. R. 27. The ALJ afforded more weight to the records of Claimant's physical treating physicians and the opinions of the consulting examining physician, Dr. Perdomo, rather than to the opinions of the non-examining state agency physicians. R. 30-31. Accordingly, the Court finds the ALJ did not err in weighing the medical records and opinions of Claimant's treating physicians.

---

[5] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

### 3) Whether the Appeals Council Erred in Denying Review

Claimant alleges that the Appeals Council erred because "it did not take the time to look over the newly submitted materials." Doc. No. 24 at 19. As set forth above, in its decision denying review of the ALJ's determination, the Appeals Council specifically stated that it "considered the reasons you disagree with the decision and the additional evidence", but "found that this information does not provide a basis for changing the [ALJ's] decision." R. 7-8. In *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1259, 1262 (11th Cir. 2007), the Eleventh Circuit found that a nearly identical statement by the Appeals Council was sufficient to show that the Appeals Council had considered the new evidence and found no basis to review the ALJ's decision. *Id*. Therefore, the record does not support Claimant's contention that the Appeals Council failed to consider the arguments and evidence presented to it for review.

In *Ingram*, 496 F.3d at 1262, the Eleventh Circuit held that when new evidence is presented for the first time to the Appeals Council, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id*. The Court has carefully reviewed the evidence and arguments submitted to the Appeals Council and finds that they do not render the denial of benefits erroneous. *See* R. 296-386. Claimant's physical findings remain the same or not significantly different. *See* R. 305-55, 367-82, 383, 384-86. There are no significant abnormalities present on any x-ray and no other findings that could reasonably render the ALJ's findings erroneous. *Id*. As to Claimant's mental health treatment records, they continue to show she suffers from depression, anxiety, and other social disorders, but Claimant's treatment regimen did not change. R. 296-304, 356-66. Moreover, her treatment goals include

obtaining employment.  R. 304, 359.  None of Claimant's treating physicians offered an opinion as to Claimant's functional limitations or opined that Claimant was totally disabled. Accordingly, the Court finds that the new evidence and arguments submitted by Claimant do not render the denial of benefits erroneous.

### 4)  Whether the ALJ Erred by Failing to Listen to Claimant at the Hearing

Claimant maintains that the ALJ discriminated against her and failed to listen to her at the hearing.  *See* R. 293-94; Doc. No. 24 at 13.  The Court has carefully reviewed the entire record, including the transcript, and finds no evidence to substantiate Claimant's allegation.

### 5)  Whether the ALJ Erred by Relying Exclusively on the Grids

Claimant asserts that the ALJ erred by relying exclusively on the medical vocational grids to determine that Claimant was not disabled.  Doc. No. 24 at 18.  The decision in *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995), is instructive on the law:

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. . . .  The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy.  Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions.  For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors. . . .  Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). . . .  <u>Pain is a nonexertional impairment</u>. . . .  <u>Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities</u>. . . .  If the grids are inapplicable, the Secretary must seek expert vocational testimony.  Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can

-30-

> perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). . . . <u>The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.</u>

*Id.* at 1559 (internal quotations omitted) (emphasis added). In *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004), the Eleventh Circuit held that "'[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Id.* (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985)) (citing *Broz v. Schweiker*, 677 F.2d 1351, 1361 (11th Cir.1982); *Broz v. Heckler*, 711 F.2d 957 (11th Cir.1983); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999); *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir.1996); *Martin v. R.R. Ret. Bd.*, 935 F.2d 230, 234 (11th Cir.1991); *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir.1987); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985)) (emphasis in original).

In the present case, the ALJ did not rely exclusively on the grids because she found that Claimant was unable to perform a full range of sedentary work. Rather, the ALJ expressly relied on the VE's testimony:

> [T]he [C]laimant's ability to perform all or substantially all of the requirements of [sedentary work] has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the [C]laimant's age, education, work experience, and residual functional capacity.

R. 32. Accordingly, the ALJ did not rely exclusively on the grids, but properly sought testimony from the VE and relied on that testimony as a basis for her opinion. Thus, Claimant's argument

is without merit.

**VII.**    <u>**CONCLUSION**</u>

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is

**AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner and close

the case.

   **DONE** and **ORDERED** in Orlando, Florida on February 18, 2010.


                        GREGORY J. KELLY
             UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Janace F. Peterson
5115 Keith Place
Orlando, FL 32808

Janacha L. Ford
973 S. Kirkman Road, Apt #45
Orlando, FL 32811

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida      33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration

61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, Florida          32817-9801